RUSSELL S. BRADBURY *vs.* J. EDWARD LAWRENCE.

Androscoggin. Opinion April 21, 1898.

*Negligence. Jury. Evidence. Injury to Horse.*

It is not error for a judge to allow a jury to find that it was not an act of negligence for a man, who hires a strange horse at a livery stable, to hitch the horse out on the road to a tree for an hour or two, although the horse, a very spirited animal, in consequence of his restlessness occasioned by his standing so long, broke from the control of the driver and ran away.

It is not error for the judge to say to the jury, in an action by the owner against the hirer for damages for carelessly managing the horse, in substance, that they had probably had experience with horses and may know that sometimes a safe horse, if not used for a few days, or having been hitched for some time and becoming annoyed by flies, will become restless and uneasy, and be for the time comparatively an unsafe horse though usually perfectly safe and reliable; that that may be within their knowledge, and that they may judge the matter according to their experience with horses and their observation.

ON MOTION AND EXCEPTIONS BY PLAINTIFF.

The case will be found in the opinion of the court.

*Geo. C. Wing*, for plaintiff.

Exceptions: *State* v. *Bartlett*, 47 Maine, 395; *Douglass* v. *Trask*, 77 Maine, 35; *Page* v. *Alexander*, 84 Maine, 84.

The bailee is presumed to have been negligent and the burden of proof rests on him showing the exercise of such care as was required by the nature of the bailment when the bailor shows, in an action against the bailee to recover damages for an injury to or a loss of goods, that the goods were placed in the hands of the bailee in good condition, and that they were returned in a damaged state. *Cumins* v. *Wood*, 44 Ills. 416, (92 Am. Dec. 189). Counsel also cited *Funkhouser* v. *Wagner*, 62 Ills. 60; *Mooers* v. *Larry*, 15 Gray, 451; *Briggs* v. *Oliver*, 4 Hurl. & C. 403.

Where the cause of injury can easily be traced to the bailee's want of care, then he is liable. *Eastman* v. *Sanborn*, 3 Allen, 594; *Banfield* v. *Whipple*, 10 Allen, 27.

*H. W. Oakes*, for defendant.

SITTING: PETERS, C. J., HASKELL, WHITEHOUSE, WISWELL, FOGLER, JJ. SAVAGE, J., having been of counsel, did not sit.

PETERS, C. J. In September, 1896, the defendant, hiring a horse and carry-all of the plaintiff, took his wife with two small children on a drive about three miles out from Auburn village for the purpose of calling upon some friends who had a cottage or camp on the side of a highland known as Thorne's Mountain. Near the place he went to visit, and before reaching it, he unloosed the horse from the carriage without removing the harness from his back, and hitched him under a shady tree in a place where he could stand comfortably. During his stay with his friends, not having a view of the horse from their cottage, he went down several times to the horse to see if he was all right, and on the last occasion found he had been rolling and had broken a small strap belonging to the harness. He mended the harness, and, to avoid further risk of the kind, removed the harness entirely from the horse, freeing him from both harness and carriage, and, with a hitch-rope which was placed in the carriage at the stable for his use, securely hitched the animal to the tree again. When the defendant later went to the horse to harness him into the carriage he found him restless and troublesome to control, a restlessness probably caused by annoyance from flies and impatience in waiting at the tree so long a time as he did. The place itself was suitable enough as a place for hitching the horse, and the passage-way to it from the main road was unobjectionable. After considerable delay and difficulty the defendant succeeded in harnessing the horse to the carriage, but the animal was so impulsive and fretted that he finally succeeded in getting away from the control of the defendant, and ran away to the injury of himself as well as to harness and carriage; his own injuries resulting some time later in his death. For the loss sustained by this casualty the plaintiff sues the defendant in this action for negligence.

The general burden of proof is on the plaintiff to prove the alleged negligence, though some burden of explanation or duty of information as a rule first lies on the defendant in such a case.

*Buswell* v. *Fuller,* 89 Maine, 600. There can be, however, no great question on the facts as to how the accident happened, the jury undoubtedly believing the impressive narrations given by the defendant and his wife in their testimony.

We have no inclination to overrule the decision of the jury as expressed in their verdict. Acts of misjudgment are by no means necessarily acts of negligence. The jury were, no doubt, of the opinion that it was not a careless act to unharness the horse from the carriage, and perhaps found that it was even good management to do so. There were no appearances at the time indicating to the defendant that there would be any risk in the act. Very likely the defendant became afraid of the horse after the struggle to control him proved to be so much of a task. The plaintiff says, "I consider the horse perfectly safe and kind if you are accustomed to driving a horse and handling one." This word handling is an insinuating term in this connection. Stablekeepers should not expect their customers to be as a rule very proficient drivers or trainers of horses. Rarely are men found to be experts in the management of horses. The plaintiff admits he should not have let the horse to a woman because he was a spirited and ambitious animal, while both the defendant and his wife noticed that the horse was nervous and traveled somewhat wildly when they first started out on the road, causing them some apprehension for their safety at the time.

The plaintiff contends that the hiring was to go to Thorne's Corner but that the defendant drove beyond the corner and went further to Thorne's Mountain, being thereby guilty of a conversion of the property. It is enough to say on this point, as the jury must have concluded, that the contention is not supported by the evidence.

The question of the case is, we apprehend, whether the presiding justice committed any error in making these observations in his charge to the jury: "There has been considerable testimony here as to the character of the horse, that he was a good horse and a gentle horse and well broken and a spirited horse, and you perhaps would be satisfied from the testimony that he was a good horse

and an ordinary safe horse, although a spirited horse. And in your experience you probably have, all of you or the most of you, if not all, have had experience with horses and you may know that sometimes even a safe horse and a gentle horse, if he hasn't been used for a few days or if he has been hitched some time and becomes annoyed either by flies or by anything else, will sometimes become restless and uneasy, and for the time, a comparatively unsafe horse, that ordinarily and usually is a perfectly reliable one. That is a matter that might be within your knowledge and you have a right to judge all matters according to your experience and dealing with horses and your observation."

He does not express his own opinion that it was so in the present case, but merely appeals to the jury to exercise their own judgment according to their common knowledge and experience in such matters. It would seem that these remarks by the court were as favorable to the excepting party as to the other, or perhaps more so, as suggesting an excuse for the behavior of the horse rather than an exculpation of any negligent conduct of the defendant. But, however the remarks may be interpreted, there was no transgression of the rule therein, according to the decision of the case of *State* v. *Maine Central R. R. Co.*, 86 Maine, 309, where similar advice was given by the judge to the jury. In that case the jury were allowed to call to their aid "their general knowledge and experience of the characteristics and habits of horses and their liability to become frightened by sights and sounds unusual to them." Uniformity of conduct may be expected in animals because a common instinct controls them, while men in what they do and say are influenced more variously by their eccentricities of disposition. "We may assume as a presumption of fact," says Wharton, "that animals as a general rule will act in conformity with their nature. Thus it is probable that untended cattle will stray; that horses will take fright at extraordinary noises and sights; and that certain kinds of dogs will worry sheep." Whar. Ev. § 1295. The case of *Crocker* v. *McGregor*, 76 Maine, 282, may illustrate the point somewhat.

*Motion and exception overruled.*